```
            IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
COLLEEN PROCTOR and
STANLEY PERKOSKI,                 *

     Plaintiffs,                  *

v.                                *     CIVIL NO.: WDQ-04-2736

EXTREME OFFSHORE MARINE,          *
INC., et al.,
                                  *

     Defendants.                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Colleen Proctor and Stanley Perkoski have sued Extreme Offshore Marine, Inc. ("Extreme") for negligence, strict products liability, negligent misrepresentation, breach of implied warranties and violation of the Maryland Consumer Protection Act. Pending are Extreme's motions for summary judgment, to exclude the testimony of experts Bruce Pfund and Michael Kaufman and Plaintiffs' motion to file a surreply. For the following reasons, Extreme's motions to exclude the testimony of Plaintiffs' experts will be denied and its motion for summary judgment granted in part and denied in part. Plaintiffs' motion to file a surreply will be denied as moot.

I. Background

On July 6, 2001, Perkoski purchased an American Offshore NSX

1

2600 powerboat (renamed "CATASTROPHE") at Extreme's Havre de Grace, Maryland dealership.  Complaint, ¶ 7.  On September 3, 2001, Perkoski was piloting the CATASTROPHE north of Baltimore at at 40 to 50 miles per hour when the boat struck a wave, became temporarily airborne, and broke apart when it reentered the water.  *Id* at ¶¶ 9-11.  The boat came to a abrupt stop and quickly sank.  *Id* at 12.  Perkoski and Proctor, his passenger, were injured when the boat rapidly decelerated.  *Id* at 11.

Plaintiffs allege that the CATASTROPHE was being operated under normal conditions and within its advertised capabilities.  Complaint, ¶¶ 8-9.  Plaintiffs contend that the cause of the accident was a defective hull to deck joint that failed when the boat reentered the water and allowed the superstructure and deck to separate from the hull.  *Id* at ¶ 13-18.  Plaintiffs argue that this separation caused the boat to come to an immediate stop and caused Plaintiffs' injuries.

Plaintiffs have sued Extreme for damages arising from the accident, arguing that Extreme: 1) is strictly liable for the boat's defects; 2) was negligent in the boat's marketing and sale; 3) negligently misrepresented the quality and characteristics of the boat; 4) violated the Maryland Consumer Protection Act by failing to disclose material facts about the boat; and 5) breached implied warranties.  Extreme has moved for summary judgment and to exclude the testimony of experts Bruce

Pfund and Michael Kaufman. Plaintiffs have requested leave to file a surreply to Extreme's Reply in Support of its Motion for Summary Judgment.

II. Extreme's Motion to Exclude the Testimony of Bruce Pfund

Extreme has moved to exclude the testimony of Plaintiffs' expert Bruce Pfund arguing that Pfund is not qualified to render an expert opinion on matters relating to powerboat design, manufacturing or operation because he has neither personal experience nor formal education in the field. Extreme further argues that this lack of expertise renders Pfund's testimony unreliable and therefore inadmissable under Rule 702 of the Federal Rules of Evidence.

Under Rule 702 trial judges act as gatekeepers to ensure that expert witnesses are qualified and their testimony reliable. Federal Rule of Evidence 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993); *Kumho Tire Co. V. Carmichael*, 526 U.S. 137 (1999); *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194 (4th Cir. 2001); *Shreve v. Sears, Roebuck & Co., Inc.*, 166 F.Supp.2d 378 (D.Md. 2001).

Although Pfund lacks formal education in the field, he has considerable experience in composite materials, construction of composite deck to hull joints and damage analysis of composite boats. Since 1980, Pfund has served as a consultant to boat

3

builders, insurance companies and the United States and Australian navies on issues of composite construction, composite materials and processes, damage and defect analysis in composite boats, boat repair, and the construction of deck to hull joints in fiberglass boats.  Pfund Declaration, ¶¶ 4-8.  Pfund has also designed, built and serviced composite construction machinery.  *Id* at ¶ 9.  Since 1989 Pfund has been the technical editor of *Professional Boatbuilder* and served as a contributing editor to *Boating* magazine from 1998-2000.  *Id* at ¶¶ 12, 14.  Since 1992 Pfund has developed and presented more than 100 seminars on composite boat construction and written several articles on boat construction and inspection methods.  *Id* at ¶¶ 10-11.  He is a member of the American Boating Council, the Society of Naval Architects and Marine Engineers and the Society for the Advancement of Materials and Process Engineering.  Pfund Declaration, Ex. 1.  Within the past six years Pfund has investigated several hull to deck joint failures (including failures in "pickle fork" type catamaran boats similar to the CATASTROPHE), and he was appointed as an independent marine expert by the United States District Court for the Northern District of California.  Pfund Declaration, ¶¶ 15-16.

The Court finds no basis to exclude Pfund's opinions about the CATASTROPHE's defects.  Accordingly, Extreme's motion to exclude Pfund's testimony will be denied.

III.  Extreme's Motion to Exclude the Testimony of Michael Kaufman

Extreme has moved to exclude the testimony of Michael Kaufman as unreliable, arguing that his conclusions are incomplete and unsupported by reliable methodology.  In the alternative, Extreme seeks to preclude Plaintiffs from using Kaufman's opinions in their case-in-chief.

As noted above, to be admissible, an expert's opinion must be reliable.  *Daubert,* 509 U.S. 579; *Kumho Tire Co.,* 526 U.S. 137.  "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods."  *Oglesby v. General Motors Corp.*, 190 F.3d (4th Cir. 1999).

Relying on documented fiberglass strength tests, the CATASTROPHE's advertised capabilities and his expertise, Kaufman has opined that the boat's hull and deck should have been able to withstand the force generated by the impact of the boat into a wave at 50 miles per hour under normal sea conditions.  Kaufman Report, p. 1-3.  Kaufman posits that the deck to hull joint should have been as strong as the pieces it joined and, therefore, the CATASTROPHE's deck to hall joint should also have been able to withstand the impact.  *Id* at 2.  Based on his post-accident inspection of the CATASTROPHE and pictures of the boat

5

taken immediately before it sank, Kaufman contends that the deck to hull joint failed, causing the deck and hull to separate. *Id* at 3. This separation, Kaufman argues, caused the boat's rapid deceleration and Plaintiffs' injuries. *Id* at 2.

Kaufman's conclusions are based on his examination of the CATASTROPHE, photographs of the CATASTROPHE before it sank, the CATASTROPHE's advertised capabilities, fiberglass strength tests provided by the American Bureau of Shipping and his expertise. Viewing the evidence and the inferences therefrom in the light most favorable to Plaintiffs, the Court finds Kaufman's methodology and his conclusions sufficiently reliable to defeat Extreme's motion to exclude his testimony.

III. Extreme's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

Extreme has moved for summary judgment arguing that: 1) Plaintiffs have failed to offer evidence that the alleged defects caused the accident; 2) Extreme did not design, manufacture or alter the CATASTROPHE's hull; 3) Extreme did not know, or have reason to know of the alleged defects; 4) Plaintiffs cannot prove a *prima facie* case of negligent misrepresentation; and 5) the Maryland Consumer Protection Act is inapplicable.


A.  Causation

Extreme argues that causation is a required element of Plaintiffs' claims and that Plaintiffs have failed to offer evidence that the alleged defects in the hull caused Proctor's

and Perkoski's injuries.  Plaintiffs agree that they must prove causation[1], but argue that: 1) Plaintiffs' experts Michael Kaufman and Bruce Pfund have opined that the CATASTROPHE's hull defects caused the boat's rapid deceleration and, therefore, Plaintiffs' injuries; and 2) circumstantial evidence shows that the defects caused Plaintiffs' injuries.  Extreme responds that: 1) Kaufman, as a rebuttal expert, cannot testify in support of the Plaintiffs' case-in-chief; 2) Pfund is unqualified to opine on causation; and 3) circumstantial evidence is not sufficient to show causation.

Viewing the facts and inferences therefrom in the light most favorable to the Plaintiffs, there appears to be a genuine issue of fact as to causation.

It is undisputed that the American Offshore NSX 2600 was advertised as capable of safe operation with the speed and water conditions present at the time of the accident.  It is further undisputed that the deck to hull joint broke, and the deck and hull separated, before the CATASTROPHE sank.  As the Plaintiffs' and Extreme's experts have opined that the CATASTROPHE's hull to deck joint was defective in several ways, Pfund Dep., p. 98-99,

---

[1] Plaintiffs' claims for strict liability and negligence are governed by admiralty law which has incorporated the common law of products liability. *See e.g. East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). Accordingly, causation is a necessary element of Plaintiffs' claim. *See e.g. Jurgensen v. Albin Marine, Inc.*, 216 F.Supp.2d 524 (D.Md. 2002).

8

Kochan Dep., 109-110, it can reasonably be inferred that because of these defects the deck to hull joint failed when the CATASTROPHE reentered the water and that this failure caused the deck and hull to separate.  Although Extreme's expert, Robert Kochan has opined that the boat's rapid deceleration was caused by the boat's impact with the water, Plaintiffs' rebuttal witness, Michael Kaufman has posited that the deceleration was largely the result of the deck-hull separation[2].  Even without Kaufman's testimony, there is evidence that the CATASTROPHE should not have come to an abrupt stop and sunk because the boat hit a wave at 50 miles per hour.  It can reasonably be inferred that the CATASTROPHE's rapid deceleration was caused by the failure of the deck to hull joint which, in turn, caused Plaintiffs' injuries.

As there is a genuine issue as to causation, Extreme's motion for summary judgment for lack of causation will be denied.

B.  Negligence for Failure to Warn

In Count II of the Complaint, Plaintiffs allege Extreme was negligent in failing to warn Plaintiffs about the CATASTROPHE's

---

[2] Extreme has argued that because Kaufman is a rebuttal witness, his opinion cannot be considered for the purposes of deciding Extreme's motion for summary judgment.  Although Extreme cites *Berlyn Inc. v. the Gazette Newspapers Inc.*, 73 Fed.Appx. 576 (4th Cir. 2003), for this position, this decision does not require the Court to ignore Kaufman's opinion in deciding this motion for summary judgment.

defects.  To prevail on Count II, Plaintiffs must prove that Extreme knew or had reason to know that the CATASTROPHE was dangerous but failed to warn Plaintiffs of the danger.  *In re Bay Runners Rentals, Inc.*, 113 F.Supp.2d 795 (D.Md. 2000)(*citing* Restatement (Second) of Torts § 388).

Extreme argues that it did not know or have reason to know of the CATASTROPHE's defects.  Plaintiffs respond that Extreme should have discovered the deck to hull joint defects when it installed the CATASTROPHE's engines.[3]

As Extreme does not dispute that it installed the CATASTROPHE's engines and has failed to argue that Extreme should not have discovered the hull defects during the engine installation, there is a genuine issue whether Extreme had reason to know of the CATASTROPHE's allegedly defective condition. Accordingly, Extreme's motion for summary judgment on Count II will be denied.

III.  Negligent Misrepresentation

Count III of the Complaint alleges that Extreme negligently misrepresented material facts about the CATASTROPHE's capabilities and condition which led to the Plaintiffs' injuries. Extreme has moved for summary judgment on Count III arguing that

---

[3] Plaintiffs' expert Bruce Pfund has opined that some of the CATASTROPHE's deck to hull joint defects would have been apparent when Extreme installed the CATASTROPHE's engines.

10

Extreme did not know or have reason to know of the CATASTROPHE's defects and that Extreme's representation of the CATASTROPHE as a "great boat" was harmless sales "puffing." Plaintiffs respond that, *inter alia,* Extreme's failure to disclose the CATASTROPHE's defects constituted negligent misrepresentation.

All parties agree that a claim for negligent misrepresentation requires proof that: 1) the defendant owed a duty of care to the plaintiff; 2) the defendant negligently asserted a false statement; (3) the defendant intended his statement to be acted upon by the plaintiff; (4) the defendant had knowledge that the plaintiff would rely on the statement and could be injured as a result; (5) the plaintiff justifiably took action in reliance on the statement; and (6) the plaintiff was injured as a result. *Martens v. Seney,* 292 Md. 328, 337 (Md. 1982). When a party has a duty to speak, but fails to disclose material facts, this nondisclosure may constitute negligent misrepresentation. *Leonard v. Sav-A-Stop Services, Inc.,* 289 Md. 204 (Md. 1981); *Adams v. NVR Homes, Inc.,* 135 F.Supp.2d 675 (D.Md. 2001).

As noted above, there is a issue of fact whether Extreme had reason to know that the CATASTROPHE was defective. As it is undisputed that Extreme did not warn Plaintiffs of the defects, there is a genuine issue whether Extreme failed to disclose material facts and, therefore, negligently misrepresented the

11

CATASTROPHE's condition and capabilities.  Accordingly, Extreme's motion to dismiss Count III of the Complaint will be denied.

IV.  Violation of the Maryland Consumer Protection Act

In Count IV of the Complaint, Plaintiffs allege that Extreme violated the Maryland Consumer Protection Act ("MPCA") by failing to disclose the CATASTROPHE's defects.  Extreme has moved for summary judgment on Count IV arguing that the MPCA does not apply to products liability actions and requires scienter, and that Proctor cannot bring a private cause of action under the MPCA because she was not in privity with Extreme.  Plaintiffs argue in response that the MPCA applies to omissions of material facts in the sale of any consumer good, there is no requirement of privity to bring a private right of action, and Extreme violated the MPCA by changing the CATASTROPHE's hull identification number to make the boat appear to be a 2001 model when in fact it was a 2000 model.

The MPCA prohibits unfair and deceptive trade practices in the sale of consumer goods.  Annotated Code of Maryland, Commercial Law, § 13-301 *et seq.*  Unfair and deceptive practices include, *inter alia,* false or misleading statements, *Id* at 13-301(1), and the "failure to state a material fact if the failure deceives or tends to deceive."  *Id* at § 13-301(3).

Although Maryland courts have held that scienter is not

12

required to prove violations of § 13-301(1) and § 13-301(3) when the misrepresentation or omission involves a legal issue, evidence of scienter is required to prove a violation that involves misrepresentation or omission of fact. *Hayes v. Hamruch,* 64 F.3d 657, slip op. (4th Cir. 1995); *Adams,* 135 F.Supp.2d at 694-694.  As Plaintiffs allege factual misrepresentations and omissions, and because there is no allegation that Extreme knew of the CATASTROPHE's defects, Plaintiffs have failed to show the requisite scienter to make a claim under § 13-301 and 13-303.  Although Plaintiffs now claim that Extreme fraudulently changed the CATASTROPHE's hull identification number to make the boat appear newer than it was, this allegation was not included in the Complaint and will not be considered.  Accordingly, Extreme's motion for summary judgment on Count IV of the Complaint will be granted.

V.   Punitive Damages

Extreme has moved for summary judgment on the issue of punitive damages arguing that punitive damages cannot be awarded in a products liability cases unless there is a showing of actual knowledge, and Plaintiffs have failed to allege that Extreme had actual knowledge of the CATASTROPHE's defects.  Plaintiffs argue in response that punitive damages should be awarded because Extreme engaged in collusive and deliberately wrongful conduct

13

when it changed the CATASTROPHE's hull identification number.

To obtain punitive damages in a products liability case under a theory of negligence or strict liability, a plaintiff must prove that the defendant had actual knowledge of the products defects and that it consciously and deliberately disregarded the foreseeable harm that would result from the defects. *Owens-Illinois, Inc. v. Zenobia,* 325 Md. 420, 462 (Md. 1992)("The knowledge component...necessary to support an award of punitive damages, does not mean 'constructive knowledge' or 'substantial knowledge' or "should have known"...plaintiff must show that the defendant actually knew of the defect and of the danger of the product."); Maryland Pattern Jury Instruction, Civil, 10:14.

As Plaintiffs do not allege that Extreme had actual knowledge of the CATASTROPHE's defects, punitive damages cannot be awarded for Plaintiffs' injuries.  As noted above, although Plaintiffs allege that Extreme fraudulently changed the CATASTROPHE's hull identification number, this allegation is not proof of Extreme's knowledge of a defect and will not be considered.  Accordingly, Extreme's motion for summary judgment on punitive damages will be granted.

VI.  Conclusion

For the reasons state above, Extreme's motions to exclude

Plaintiffs' experts will be denied and its motion for summary judgment granted on punitive damages and Count IV and denied on Counts I, II, III and VI.  Plaintiffs' motion to file a surreply will be denied as moot.


<u>January 24, 2006</u>                             <u>        /s/              </u>
Date                                         William D. Quarles, Jr.
                                             United States District Judge